UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TEVAC, INC.,

                            Plaintiff,                    **REPORT AND**
                                                                          **RECOMMENDATION**
          -against-                              CV 19-3650 (JS)(AYS)

DYNAMICS Eshop, INC.,

                            Defendant.
-----------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

       This is a diversity action for breach of contract arising out of an agreement between the parties by which Defendant would create and furnish to Plaintiff an e-commerce website platform. Before the Court, on referral from the Honorable Joanna Seybert, are cross-motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the following reasons, this Court respectfully recommends that Defendant's motion be granted in part and denied in part and that Plaintiff's motion be denied in its entirety.

BACKGROUND

       The relevant facts, as set forth below, are taken from those portions of the parties' Local Civil Rule 56.1 statements upon which they agree, as well as the documents offered by the parties in support of and in opposition to the within motion.

I.      <u>The Parties</u>

       Plaintiff, Tevac, Inc. ("Plaintiff" or "Tevac"), is an industrial distributorship, located in the State of New York, that sells various hot runner components, extrusion supplies, molding supplies, mold components, and other parts, supplies and products to the plastics industry. (Pl. Local Civ. R. 56.1 Statement ("Pl. 56.1") ¶ 1; Def. Local Civ. R. 56.1 Statement ("Def. 56.1") ¶ 1.) Plaintiff's current customers are "legacy accounts" and purchase products from Plaintiff

because they have bought from it in the past. (Def. 56.1 ¶ 2.) Defendant, Dynamics eShop, Inc. ("Defendant" or "Dynamics"), is a corporation located in the State of California that develops and implements e-commerce solutions for companies utilizing Microsoft Dynamics Nav ERP. (Pl. 56.1 ¶ 3; Def. 56.1 ¶ 3.)

II.     The Agreement

On or about August 16, 2018, Plaintiff and Defendant entered into a Software Proposal and Implementation Agreement (the "Agreement") for the purpose of enabling Plaintiff to launch an e-commerce website. (Pl. 56.1 ¶ 4; Def. 56.1 ¶ 4.) Plaintiff's principal, Peter Roukis ("Roukis"), executed the Agreement on behalf of Plaintiff. (Def. 56.1 ¶ 5.)

Prior to preparing and entering into the Agreement, Defendant's President, Naveen Reddy ("Reddy"), was provided with Plaintiff's website information. (Pl. 56.1 ¶ 7.) Reddy visited and reviewed Plaintiff's website. (Id.) Plaintiff does not have any expertise in the designing and implementation of an e-commerce platform. (Pl. 56.1 ¶ 11.) Rather, in entering into the Agreement, Plaintiff was relying upon Defendant's claimed expertise in all aspects of creating, consulting and implementing the website within the time frame set forth in the Agreement. (Pl. 56.1 ¶ 13.)

Pursuant to the Agreement, Defendant was to assist Plaintiff with the development and implementation of an e-commerce website for Plaintiff's business-to-consumer operation. (Def. 56.1 ¶ 7.) Defendant was to furnish Plaintiff with a fully functioning e-commerce website on or before October 13, 2018. (Pl. 56.1 ¶ 15.) The Agreement expressly provided that the time frame set forth therein was of "key importance." (Pl. 56.1 ¶ 17.)

The Agreement set forth the responsibilities and tasks of both parties. (Def. 56.1 ¶ 8.) To that end, Defendant agreed to provide implementation and project management assistance for the

installation and configuration of the e-commerce website. (Def. 56.1 ¶ 9.) Defendant also agreed to provide "weekly statements" to Plaintiff, as well as a detailed project plan, known as the Design Document. (Pl. 56.1 ¶¶ 21, 23.) The Agreement stated that once the "Design Document is approved, [Defendant] will be able to provide the Project Plan outlining the timing of the implementation." (Pl. 56.1 ¶ 21.) The Design Document was to "detail work flow, screens, securities, data conversions, financial functions, training and bread these major milestones down with specific hour estimates." (Pl. 56.1 ¶ 11.) In addition to outlining Plaintiff's responsibilities, the Agreement expressly states that the "success of the project will greatly depend on Tevac's level of involvement" and that Plaintiff's "[f]ailure to fulfill [its] responsibilities in a timely manner may impair [Defendant's] ability to provide service." (Def. 56.1 ¶ 10.)

The Agreement also contained an estimated project schedule and a payment schedule. (Def. 56.1 ¶ 11.) The timeline provided that the website would be functional in approximately eight weeks' time, with a chart for how long each phase of the project would approximately take to complete. (Def. 56.1 ¶ 12.) The payment schedule consisted of an initial payment for services, quarterly payments, and milestone payments. (Def. 56.1 ¶ 13.)

> Paragraph 11 of the Agreement, entitled "Warranty," provides as follows:
>
> [Defendant] warrants that customizations and/or modifications made solely by [Defendant] shall be free of defects for a period of one year from the date of implementation. Customizations or program modifications made by [Defendant] can be of such complexity that they may have errors. It is agreed by [Plaintiff] that as [Defendant's] sole liability and [Plaintiff's] sole remedy, that [Defendant] will provide reasonable and timely programming to correct documented code errors which were caused by a defect in unaltered software customizations or modifications authored by [Defendant]. Such remedy would be at no charge to [Plaintiff].
>
> [Defendant] makes no representation, express or implied, to [Plaintiff] with respect to profit or loss, installation or any future modifications that may be made to the software, either by any third party software or another party. In no event shall [Defendant] be responsible for any special or consequential damages or lost profits

3

> even if informed of same occurring out of or in connection with the delivery, use or performance of software.
>
> The above express warranties are the only warranties made and shall be in lieu of any other warranty, express or implied. You are advised to test the software thoroughly before relying on it and assume the risk of using the software.

(Def. 56.1 ¶ 15.)

The "Default" section of the Agreement provides that, in the event Plaintiff fails to pay Defendant for software support provided, Plaintiff agrees to pay interest and/or reasonable attorney's fees incurred by Defendant in its collection efforts. (Def. 56.1 ¶ 16.) The Default section further provides that if litigation ensues between the parties, the prevailing party shall be entitled to reasonable attorney's fees and costs. (Def. 56.1 ¶ 17.) The Agreement states that it is governed by the laws of California. (Def. 56.1 ¶ 18.)

III.   <u>Plaintiff's Alleged Breach of the Agreement</u>

Pursuant to the Agreement, Plaintiff was required to give Defendant access to its Microsoft Dynamics NAV system. (Def. 56.1 ¶ 19.) To that end, on August 20, 2018, Reddy emailed Roukis, requesting access to the NAV system via remote desktop. (Def. 56.1 ¶ 20.) Plaintiff did not provide the requested access until September 17, 2018, almost one month later. (Def. 56.1 ¶ 21.)

On September 24, 2018, Reddy emailed Roukis, advising that Defendant had successfully completed the integration test. (Def. 56.1 ¶ 23.) Reddy's email also inquired whether Plaintiff was "able to start work on building [its] category structure, and what products [it] want[ed] on [its] website." (Def. 56.1 ¶ 24.) Plaintiff was responsible for providing its product data pursuant to the terms of the Agreement. (Def. 56.1 ¶ 26.) As per the terms of the Agreement, Plaintiff was required to provide its data on approved templates provided by Defendant. (Def. 56.1 ¶¶ 27-28.)

4

Defendant routinely checked in with Plaintiff to ascertain the status of Plaintiff's uploading of its data. (Def. 56.1 ¶ 40.) On October 8, 2018, Reddy emailed Roukis, requesting an update on where Plaintiff stood with respect to the data published to the website. (Def. 56.1 ¶ 41.) Reddy emailed Roukis again on November 2, 2018, "to check and see how things are and plan for go live." (Def. 56.1 ¶ 42.) By email dated November 11, 2018, Roukis responded, stating that Plaintiff "still [had] to enter a lot a [sic] products." (Def. 56.1 ¶ 43.) Ultimately, the website never "went live." (Def. 56.1 ¶ 44; Pl. 56.1 ¶ 24.)

IV.     Defendant's Alleged Breach of the Agreement

Defendant did not provide Plaintiff with the Design Document, as specified in the Agreement. (Pl. 56.1 ¶ 25.) Defendant similarly did not provide Plaintiff with weekly statements, as set forth in the following provision of the Agreement: "Weekly statements will be provided to [Plaintiff] detailing all work performed by [Defendant] and hours and thus provide [Plaintiff] an on-going audit and control of the implementation." (Pl. 56.1 ¶ 26; Def. 56.1 ¶ 48.) Plaintiff takes the position that receipt of the weekly statements would have sped up the data uploading process. (Def. 56.1 ¶ 49.) Defendant takes the position, as communicated to Plaintiff via email on April 24, 2019, that Defendant did not provide weekly statements because the parties were in constant communication with Plaintiff throughout the project and provided regular updates. (Def. 56.1 ¶ 52.)

V.      Payments Made

Plaintiff made an initial payment to Defendant on August 16, 2018, and a second payment on November 27, 2018, for a total of $14,600. (Pl. 56.1 ¶ 32; Def. 56.1 ¶ 56.) Defendant continued to send Plaintiff invoices throughout 2019, but Plaintiff failed to remit any further payments. (Def. 56.1 ¶¶ 60-62.)

VI.        <u>The Within Litigation</u>

Plaintiff commenced the within action by the filing of a Complaint on June 21, 2019, alleging a single claim of breach of contract. (Compl., Docket Entry ("DE") [1].) Defendant answered the Complaint on August 13, 2019, asserting counterclaims for breach of contract and unjust enrichment. (Ans., DE [15].) Plaintiff filed its Answer to Defendants' Counterclaims on August 21, 2019. (Ans., DE [17].)

Discovery proceeded rather smoothly, with all discovery being complete by November 25, 2020. Presently before the Court are the instant cross-motions for summary judgment. Defendant's motion seeks summary judgment with respect to Plaintiff's claim for breach of contract, as well as with respect to its counterclaim for breach of contract. (DE [44].) Defendant further seeks a holding that Plaintiff cannot recover consequential damages on its breach of contract claim on the grounds that such damages are barred by the parties' Agreement or, in the alternative, because Plaintiff's expert should be disqualified, pursuant to Federal Rule of Evidence 702, and therefore, Plaintiff cannot offer competent evidence of lost profits. (<u>Id.</u>) Finally, Defendant seeks an award of reasonable attorney's fees and costs. (<u>Id.</u>)

Plaintiff opposes Defendant's motion in its entirety and cross-moves for summary judgment, seeking judgment with respect to its claim for breach of contract, as well as with respect to Defendant's counterclaim for breach of contract. (DE [47].) Plaintiff's motion also seeks an order setting a hearing on the issue of damages, as well as an award of reasonable attorney's fees and costs. (<u>Id.</u>) The Court now turns to the merits of both motions.

DISCUSSION

I.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard dictates that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

II.    Breach of Contract

As per the Agreement, which the parties do not dispute, California law applies to any claims herein. (Def. 56.1 ¶ 3.) "Under California law, the elements required for a cause of action for breach of contract are: (1) the existence of a contract, (2) plaintiff's performance or excuse of nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff." Kingsley Mgmt. Corp. v. Occidental Fire & Cas. Co., 441 F. Supp. 3d 1016, 1024 (S.D. Cal. 2020) (citing

7

Reichert v. General Ins. Co., 68 Cal. 2d 822 (1968)); see also Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011) (same).

"A bedrock principle of California contract law is that '[h]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.'" Brown v. Dillard's, Inc., 430 F.3d 1004, 1010 (9th Cir. 2005) (quoting Pry Corp. of Am. v. Leach, 177 Cal. App. 2d 632, 639 (1960)); see also Oracle Am., Inc. v. Innovative Tech. Distributors LLC, Nos. 5:11-CV-01043, 11-CV-02135, 2012 WL4122813, at *20 (N.D. Cal. Sept. 18, 2012) ("It is axiomatic that a plaintiff who has materially breached or failed to perform a contract may not pursue a breach of contract action against the other party to the agreement."). Similarly, where a party's failure to perform a contractual obligation "constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract." Brown v. Grimes, 192 Cal. App. 4th 265, 277 (2011) (citations omitted). "California courts allow termination [of a contract] only if the breach can be classified as 'material,' 'substantial,' or 'total.'" Boston LLC v. Juarez, 245 Cal. App. 4th 75, 82 (2016) (citation omitted).

Here, there is no dispute regarding the existence of a contract. Rather, the crux of the action is whether the parties each performed their respective obligations under the Agreement. Plaintiff argues that Defendant breached the Agreement by failing to provide it with a functioning e-commerce website, failing to provide the required Design Document, and failing to provide weekly statements to Plaintiff, all of which Plaintiff asserts were material to the parties' Agreement. Plaintiff further argues that Defendant failed to advise it of the resources that would be required of Plaintiff to facilitate the design and implementation of the e-commerce website. (Pl. Mem. of Law in Opp'n and in Support of Cross-Mot. 4.)

8

Conversely, Defendant argues that Plaintiff breached the Agreement by failing to fully perform its contractual obligation to provide its data on approved templates, which prevented completion of the e-commerce website. Defendant asserts that Plaintiff's non-performance is material because it frustrated the very purpose of the Agreement. Appearing to acknowledge its own failures under the Agreement, Defendant argues that the failure to deliver weekly statements to Plaintiff was not material, asserting that it "substantially performed its obligations under the Agreement such that any technical breach was not material." (Def. Memo of Law 7-9.)

"Normally[,] the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact." Brown, 192 Cal. App. 4th at 277 (citing cases). Only where "there is no genuine dispute of material fact that the complaining party failed to perform" is summary judgment appropriate. Eonline Global, Inc. v. Google LLC, 387 F. Supp. 3d 980, 987 (N.D. Cal. 2019) (citing Oracle, 2012 WL 4122813, at *20). Here, there are numerous questions of fact as to whether the parties each performed their respective contractual obligations, necessitating a determination by a factfinder. On the record before the Court, summary judgment is not possible.

Accordingly, this Court respectfully recommends that both Plaintiff's and Defendant's motions for summary judgment be denied with respect to all claims for breach of contract.

III.   Consequential Damages

Defendant's motion for summary judgment also seeks a ruling that Plaintiff cannot recover the lost profits it seeks because such damages are barred by the Agreement. Plaintiff opposes the motion and seeks a ruling that the lost profits it seeks are recoverable.

Pursuant to California law, "the fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." National Rural Telecoms. Coop. v. DIRECTV, Inc.,

9

319 F. Supp. 2d 1040, 1046 (C.D. Cal. 2003) (quoting Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1264 (1992)). "California courts begin their analysis with the contract language." National Rural Telecoms., 319 F. Supp. 2d at 1046. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Id. (quoting Cal. Civ. Code § 1638). Accordingly, the "intention of the parties [is to] be ascertained from the writing alone, if possible and from the review of the contract as a whole." National Rural Telecoms., 319 F. Supp. 2d at 1046 (citing Cal. Civ. Code §§ 1636, 1641).

Pursuant to Paragraph 11 of the Agreement, entitled "Warranty," Defendant "ma[de] no representation, express or implied, to [Plaintiff] with respect to profit or loss, installation or any future modifications that may be made to the software, either by any third party software or another party." (Agreement ¶ 11, annexed to Shapiro Decl. at Ex. D.) The Agreement goes on to state that "[i]n no event shall [Defendant] be responsible for any special or consequential damages or lost profits even if informed of same occurring out of or in connection with the delivery, use or performance of software." (Id.) Defendant argues that this language bars Plaintiff's recovery of lost profits.

The Court agrees with Defendant. Looking at the plain language of the Agreement, the Court cannot envision a broader prohibition on consequential damages than the one contained in the parties' contract. The Agreement very specifically states that under no circumstances will Defendant be liable for special or consequential damages, including lost profits. Plaintiff appears to argue that the language beginning with "even if informed" somehow narrows the contract provision such that it only bars lost profits if the breach of the contract encompasses the delivery, use or performance of software. (Pl. Mem. of Law in Opp'n and in Supp. of Cross-Mot. 6-7.) This Court finds, however, that the language relied upon by Plaintiff actually broadens the scope

10

of the provision. The contract language is quite clear that Defendant is not responsible for special or consequential damages, including lost profits, "even if" such damages pertain to the "delivery, use or performance of software." (Agreement ¶ 11.) If the Agreement were to limit the prohibition on special damages to only those situations involving the delivery, use or performance of software, as Plaintiff argues, the Court imagines the contract language would have contained the word "only" rather than the phrase "even if." The Court finds that the use of the phrase "even if" broadens, rather than narrows, the prohibition on consequential damages.

Considering the plain language of the parties' Agreement, and the fact that there is no dispute that the contract was negotiated as part of an arm's length business transaction between two sophisticated business entities, this Court finds that the lost profits Plaintiff seeks to recover are barred, as a matter of law, by the parties' Agreement. "When the parties are dealing in an arm's length transaction with an opportunity to accept, reject or modify the terms of the agreement . . . [t]he parties are bound by the terms of the contract . . . ." Markborough California, Inc. v. Superior Court, 227 Cal. App. 3d 705, 716 (1991). Accordingly, this Court respectfully recommends that Defendant's motion for summary judgment be granted with respect to Plaintiff's recovery of lost profits.[1]

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendant's motion for summary judgment be granted in part and denied in part. Specifically, the Court recommends that Defendant's motion be granted solely with respect to Plaintiff's recovery of lost profits in that the Court finds such damages to be barred as a matter of law by the parties' Agreement. In

---

[1] Since the Court finds that consequential damages, including lost profits, are barred as a matter of law, there is no need to reach that portion of Defendant's motion that seeks to disqualify Plaintiff's expert and exclude his opinion on lost profits.

all other respects, Defendant's motion should be denied. The Court further recommends that Plaintiff's cross-motion for summary judgment be denied in its entirety.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated: Central Islip, New York
       July 21, 2022                        /s/     Anne. Y. Shields
                                                  ANNE Y. SHIELDS
                                                  United States Magistrate Judge